*753 TEXTO COMPLETO DE LA SENTENCIA
Acude ante este Tribunal el Sr. Marcos Irizarry Mercado a solicitar que revisemos una resolución emitida el 9 de junio de 2008 por la Comisión de Investigación, Procesamiento y Apelación del Estado Libre Asociado de Puerto Rico (CIPA). En dicha resolución, la CIPA confirmó la determinación del Alcalde del Municipio de Mayagüez de expulsarlo del Cuerpo de la Policía Municipal de esa cuidad.
Examinados los escritos presentados por las partes, así como la regrabación de las vistas celebradas ante la CIPA y la normativa aplicable, resolvemos confirrpar la resolución recurrida.
I
Según surge del expediente, en el 2006, el Sr. Irizarry se desempeñaba como Policía Municipal del Municipio de Mayagüez (Municipio). Sin embargo, fue expulsado de ese puesto por alegadamente haber incurrido en actos de mal uso y abuso de autoridad contra un ciudadano. En la formulación de cargos emitida el 24 de agosto de 2006 por el Comisionado de la Policía Municipal de dicho Municipio, Sr. Agustín Marrero Marrero, (Comisionado Municipal), se le imputó al Sr. Irizarry haber cometido dos (2) faltas graves en violación al Reglamento de la Policía Municipal. Específicamente, se le imputó haber cometido la Falta Grave 1, a saber, demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad y negligencia en el desempeño de sus deberes, y la Falta Grave 37, esto es, incurrir en mal uso o abuso de autoridad o exhibir un patrón de conducta de esta naturaleza, entendiéndose como actos de mal uso o abuso de autoridad cualquier arresto o detención ilegal o irrazonable.
Según expresó el Comisionado Municipal en la formulación de cargos, la Policía Municipal había efectuado una investigación sobre unos hechos acaecidos el 10 de febrero de 2006. De dicha investigación surgió que supuestamente ese día, durante las horas de la noche, el Sr. Irizarry se encontraba en los predios de la “Gasolinera To Go” ubicada en la calle McKinley del Municipio e intervino con el Sr. Javier Augusto Ravelo Cruz, por alegadamente éste haber estado “chillando” gomas. De la investigación surgió, además, que el Sr. Irizarry sostuvo una discusión con el Sr. Ravelo, lo arrestó 'y lo trasladó a la Comandancia Municipal. No obstante, en la Comandancia Municipal dialogó con las partes envueltas, llegó a un acuerdo verbal y dejó marchar al Sr. Ravelo “como si nada hubiese ocurrido”. Según explicó el Comisionado Municipal en la formulación de los cargos, el Sr. Irizarry no confeccionó informe alguno sobre el arresto y tampoco consultó el caso con un fiscal.
Por tales actuaciones, el Comisionado Municipal recomendó como acción disciplinaria la suspensión de empleo y sueldo del Sr. Irizarry por un período de tres (3) meses. En la formulación de cargos se le apercibió al Sr. Irizarry de su derecho a solicitar la celebración de una vista administrativa. Luego de celebrada la vista administrativa en cuestión, el Alcalde del Municipio emitió una resolución final en la que expulsó al Sr. Irizarry de su puesto como Policía Municipal.
Insatisfecho con tal proceder, el 19 de junio de 2007, el Sr. Irizarry presentó una apelación ante la CIPA. Allí sostuvo que la prueba con la que contaba el Municipio era insuficiente para sustentar los cargos formulados en su contra y que su expulsión como medida disciplinaria era injustificada. Así pues, le solicitó a la CIPA que celebrara una vista administrativa, que dejara sin efecto la sanción disciplinaria impuesta por el Municipio y que *754 ordenara su restitución en su puesto como Policía Municipal.
Luego de algunos trámites procesales innecesarios aquí pormenorizar, la CEPA celebró la vista en su fondo los días 19 de mayo de 2008 y 9 de junio del mismo año. En la vista testificaron, por parte del Municipio, el Comisionado Municipal, el Policía Municipal Luis Suárez Villalobos y el Sr. Ravelo. El Sr. Irizarry no presentó prueba testifical alguna, toda vez que prefirió presentar prueba documental, específicamente ciertas declaraciones escritas de varios Policías Municipales.
Así las cosas, el 9 de junio de 2008, la CEPA emitió una resolución en la que confirmó la medida disciplinaria de expulsión impuesta por el Municipio al Sr. Irizarry. En la resolución, la CIPA señaló que la prueba había demostrado que el Sr. Irizarry cometió las faltas imputadas. Según expresó, el Sr. Irizarry violentó la Falta Grave 1 del Reglamento de la Policía Municipal, dado que demostró incapacidad manifiesta, ineptitud, descuido, parcialidad y negligencia en el desempeño de sus deberes. Expresó, además, que el arresto y encarcelamiento del Sr. Ravelo fue injustificado, por lo que al Sr. Ravelo participar en la agresión y arresto ilegal de éste claramente violentó la falta 37 del referido Reglamento.
Inconforme con tal determinación, el 4 de agosto de 2008, el Sr. Irizarry presentó una -moción de reconsideración. Argumentó que procedía que la CEPA reconsiderara su determinación por las siguientes razones: que el Comisionado Municipal había recomendado como sanción disciplinaria una suspensión de empleo y sueldo de tres (3) meses; que de los informes no surgía que él hubiera agredido al Sr. Ravelo y que de las declaraciones escritas que presentó surgía que el día de los hechos el Sr. Ravelo estaba agresivo y tenía una actitud negativa.
El 6 de agosto de 2008, la CIPA denegó la reconsideración solicitada por el Sr. Irizarry. Tal determinación fue notificada a las partes el 18 de agosto de 2008.
Nuevamente inconforme, el 16 de septiembre de 2008, el Sr. Irizarry compareció ante nos mediante el recurso que hoy nos ocupa y nos plantea que al resolver su apelación, la CEPA cometió el siguiente error:

“Erró la Comisión de Investigación, Procesamiento y Apelación al declarar no ha lugar la apelación presentada por el recurrente, ya que la prueba que tuvo ante su consideración no se fundamenta en una base racional ni en prueba sustancial que justifique su determinación de confirmar la acción del Municipio de Mayagüez. ”

Por su parte, el 15 de octubre de 2008, el Municipio acudió ante este Foro y nos requiere que confirmemos la determinación de la CIPA. Para fundamentar su requerimiento, el Municipio sostiene que durante la vista en su fondo, mediante evidencia testifical y documental creída por la CEPA, había demostrado que el Sr. Irizarry arrestó y encarceló ilegalmente al Sr. Ravelo y que la conducta desplegada por el Sr. Irizarry durante tal intervención había sido una demostrativa de parcialidad y negligencia en el desempeño de sus deberes. Sostiene, también, que el Sr. Irizarry no presentó prueba testifical durante la vista y ahora pretende utilizar declaraciones escritas no juramentadas de varios Policías Municipales para refutar la prueba testifical presentada por el Municipio en dicha vista.
El 31 de octubre de 2008 emitimos una resolución en la que le ordenamos a la CEPA que en un término de veinte (20) días nos elevara la regrabación de los procedimientos del caso de epígrafe. El 26 de noviembre de 2008, la CEPA presentó ante nos la regrabación que le solicitáramos.
Con el beneficio de la regrabación de los procedimientos, así como de la comparecencia de ambas partes, estamos en posición de resolver y así procedemos a hacerlo.
*755 II
Nuestro derecho administrativo se basa en una actitud de gran consideración y deferencia por parte de los tribunales hacia las decisiones de las agencias administrativas. Vélez v. A.R.P.E., 167 D.P.R. _ (2006), 2006 J.T.S. 78. Los procesos administrativos y las determinaciones de hechos de las agencias están cobijados por una presunción de regularidad y corrección. Vélez v. A.R.P.E., supra; Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987). Esta presunción de regularidad y corrección debe ser respetada por los tribunales mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. Misión Ind. P.R. v. J. P., 146 D.P.R. 64, 130 (1998); citando a: Henríquez v. Consejo de Educación Superior, supra, a la pág. 210. Las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues éstos cuentan con experiencias y conocimientos altamente especializados sobre los asuntos que se les encomiendan. Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 123 (2000); M & V Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183, 189 (1984). Subyace a esta actitud deferencial el respeto por nuestro sistema constitucional de separación de poderes. Vélez v. A.R.P.E., supra.
La doctrina de deferencia judicial presupone una participación restringida y limitada de los tribunales en la revisión de las decisiones de los organismos administrativos. Vélez v. A.R.P.E., supra. La revisión judicial se limita a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si ésta actuó de manera arbitraria, caprichosa o ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. Vélez v. A.R.P.E., supra; Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 280 (1999); Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 94 (1997); Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993).
Cuando se impugnan decisiones de los organismos administrativos, los tribunales deben indagar sobre la razonabilidad de las mismas y no deben sustituirlas por su propio criterio. Rivera Concepción v. A.R.P.E., supra, a la pág. 123. Sólo podrá revocarse o modificarse la actuación administrativa cuando se pruebe que la actuación impugnada fue arbitraria, ilegal o irrazonable o cuando no exista en la totalidad del expediente prueba sustancial que sostenga las determinaciones efectuadas por la agencia. Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 674 (1997). En ausencia de tales consideraciones, la actuación administrativa deberá ser confirmada. Id.
Esta deferencia no equivale a la renuncia de la función revisora en instancias apropiadas y meritorias como, por ejemplo, cuando el organismo administrativo ha errado en la aplicación de la ley. Reyes Salcedo v. Policía de P.R., supra, a la pág. 94; Fuertes y otros v. A.R.P.E., supra, a la pág. 953. La revisión judicial de las decisiones administrativas tiene como objetivo principal el delimitar la discreción de los organismos administrativos y asegura que éstos desempeñen sus funciones conforme a la ley. Mun. de San Juan v. J.C.A., supra, a la pág. 279; Misión Ind. P.R. v. J.P., supra, a la pág. 129. Así pues, la revisión de las decisiones administrativas cubre tres aspectos: la revisión de la concesión de un remedio apropiado, la revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial y la revisión completa y absoluta de las conclusiones de derecho. P.R. T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269, 281 (2000); Misión Ind. P.R. v. J.P., supra, a la pág. 129; Reyes Salcedo v. Policía de P.R., supra, a la pág. 93.
Las determinaciones de hechos de una agencia administrativa deben ser sostenidas por los tribunales si están respaldadas en evidencia suficiente que surja del expediente administrativo considerado en su totalidad. Pacheco v. Estancias, 160 D.P.R. 409, 432 (2003); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 75 (2000). Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Id. Para determinar si las determinaciones de hechos de las agencias están sostenidas por la evidencia, el tribunal revisor debe considerar la evidencia en su totalidad, tanto la que sostenga la decisión administrativa, como la que menoscabe el peso que la agencia le haya conferido. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 437 (1997). Dicha norma persigue evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor. P.R.T.C. v. J. Reg. Tel. de P.R., supra, a la pág. 283. Conforme a la referida norma, el tribunal limita su intervención a evaluar si la decisión administrativa es razonable y no si hizo una determinación correcta de los hechos ante su consideración. Assoc. *756 Ins. Agencies, Inc. v. Com. Seg. P.R., supra, a la pág. 437. En caso de que exista más de una interpretación razonable de los hechos, el tribunal debe sostener la que seleccionó la agencia, y no sustituir su criterio por el de ésta. Pacheco v. Estancias, supra, a la pág. 432.
La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 del 12 de agosto de 1988, según enmendada, 3 L.P.R.A. see. 2175, recoge la mencionada norma jurisprudencial y delimita el alcance de la revisión judicial. La Sección 4.5 dispone:

“El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. ” (Énfasis nuestro).
Así mismo, es doctrina altamente reiterada que los tribunales no intervendrán con la adjudicación de credibilidad del juzgador de los hechos, salvo que exista pasión, prejuicio o error manifiesto. Flores v. Sociedad de Gananciales, 146 DPR 45, 49 (1998). “Ello es particularmente cierto cuando están en cuestión elementos altamente subjetivos ... En tales casos, el juzgador de los hechos, que oyó y vio declarar a los testigos, y apreció su demeanor, es quien está indudablemente en la mejor posición para aquilatar la prueba testifical desfilada. ” Id., citando a. López Vicil v. ITT Intermedia, Inc., 142 D.P.R. 857, 865 (1997).
.Por tanto, la apreciación de credibilidad de los testigos hecha por la agencia merece deferencia y los tribunales apelativos no intervendremos en las determinaciones de hechos de las agencias administrativas, salvo que se demuestre la inexistencia de evidencia sustancial en apoyo de las mismas.
A diferencia de las determinaciones de hechos, las conclusiones estrictamente de derecho podrán revisarse en todos sus extremos. P.R.T.C. v. J. Reg. Tel. de P.R., supra, a la pág. 282; Reyes Salcedo v. Policía de P.R., supra, a la pág. 95. No obstante, esto no significa que los tribunales, al ejercer su función revisora, puedan descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Martínez v. Rosado, 165 D.P.R. _ (2005), 2005 J.T.S. 132; Otero v. Toyota, 163 D.P.R. _ (2005); 2005 J.T.S. 13. Toda vez que la doctrina sobre la revisión judicial reconoce, igualmente, que la interpretación de un estatuto por el organismo que lo administra y es responsable de su cumplimiento, merece gran respeto y deferencia judicial. Martínez v. Rosado, supra; Procuradora Paciente v. MCS, 163 D.P.R. _ (2004), 2004 J.T.S. 160; Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 75 (2000); Vázquez v. A.R.P.E., 128 D.P.R. 513, 523-524 (1991).
Las conclusiones de derecho del organismo administrativo deberán ser sostenidas por los tribunales en la medida que éstas se ajusten al mandato de ley. P.R.T.C. v. J. Reg. Tel. de P.R., supra, a la pág. 283. En casos marginales o dudosos, la interpretación de un estatuto por la agencia encargada de velar por su cumplimiento merece deferencia sustancial, aun cuando dicha interpretación no sea la única razonable. Martínez v. Rosado, supra; P.R.T.C. v. J. Reg. Tel. de P.R., supra, 283; De Jesús v. Depto. Servicios Sociales, 123 D.P.R. 407, 418 (1989).
Por el contrario, los tribunales se abstendrán de avalar la interpretación de la agencia si ésta: erró al aplicar la ley, actuó arbitraria, irrazonable o ilegalmente, o lesionó derechos constitucionales fundamentales. Hernández v. Centro Unido, 168 D.P.R. _ (2006), 2006 J.T.S. 140; P.C.M.E. v. J.C.A., 166 D.P.R. _ (2005), 2006 J.T.S. 7; San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374, 396-397 (2001). Los tribunales podrán sustituir el criterio de la agencia por el propio, sólo cuando no puedan hallar una base racional para explicar la decisión *757 administrativa. Hernández v. Centro Unido, supra; Otero v. Toyota, supra.
Ill
En el caso de marras, el Sr. Irizarry sostiene que.incidió la CIPA al confirmar la expulsión de su puesto como Policía Municipal. Según alega, la prueba escuchada y admitida por la CIPA no constituyó evidencia suficiente y sustancial para justificar la referida acción disciplinaria.
El Sr. Irizarry fundamenta su contención en que en las determinaciones de hechos la CIPA no hizo referencia a cierta prueba documental que alegadamente lo beneficiaba. Argumenta que esa prueba estaba contenida en varias declaraciones escritas de Policías Municipales que fueron admitidas como evidencia durante la vista administrativa. Argumenta, además, que los hechos expuestos en las mencionadas declaraciones ameritaban que la CIPA modificara o revocara la sanción disciplinaria que le impuso el Municipio.
De lo anterior se desprende que el Sr. Irizarry cuestiona ante nos la apreciación de la prueba que efectuó la CIPA así como la adjudicación de credibilidad que ésta realizó y a su vez nos requiere que intervengamos con las determinaciones de hechos emitidas por el referido organismo.
Según surge del expediente, durante la celebración de la vista administrativa, las partes tuvieron amplia oportunidad de presentar tanto prueba testifical como prueba documental para sustentar sus respectivos argumentos. La prueba testifical desfilada durante la vista consistió en las declaraciones del Comisionado Municipal; el Policía Municipal Luis Suárez Villalobos, quien era el Supervisor de turno en la noche de los hechos; y el Sr. Ravelo, ciudadano que alegadamente fue arrestado y encarcelado ilegalmente. Toda la prueba testifical fue traída por el Municipio, dado que el Sr. Irizarry meramente se limitó a presentar prueba documental.
La prueba documental presentada por el Sr. Irizarry consistió en cuatro (4) declaraciones de los siguientes Policías Municipales: Sra. Jackeline Merle Pérez, Sr. Joseph Agostini Andújar, Sr. Miguel Barceló Caraballo y Sr. Gabriel Rivera Angleró. Además, el Sr. Irizarry presentó una declaración jurada del Sr. Ravelo. Es de destacar que las declaraciones de los Policías Municipales no fueron juramentadas ante un notario. Es de destacar, además, que el Sr. Irizarry no trajo a dichos testigos a la vista administrativa para que declararan a su favor.
Luego de analizar la prueba presentada por las partes durante la vista administrativa, la CIPA efectuó las siguientes determinaciones de hechos:

2- El día 10 de febrero de 2006, el señor Javier Augusto Ravelo Cruz se encontraba en el garaje de gasolina To GO en la Calle McKinley de Mayagiiez a eso de las 11:00 p.m. Allí se encontró con un amigo, el señor Frank Acevedo Barbosa.

3- El apelante Marcos Irizarry Mercado entró en el garaje, se dirigió hacia el señor Ravelo y le preguntó que porqué estaba “chillando” gomas, ... El señor Ravelo trató de explicarle que él no estaba incurriendo en semejante práctica. ...El apelante procedió a empujar al señor Ravelo con el rotén. ^

4- El amigo del señor Ravelo, Frank Acevedo, le dijo: “Vámonos” y salieron de la gasolinera.

5- Cuando el señor Ravelo entró en su vehículo, el apelante se le acercó y le preguntó si era “guapo”. El señor Frank Acevedo trató de hablar con el apelante, pero no recibió respuesta.

6- El Sr. Ravelo se bajó del auto y de repente regresó la PM Jackeline Merle. El apelante le dijo a la PM Merle: “Te dijo cabrona” y ella agredió al Sr. Ravelo empujándolo. Llegaron entre 7 ó 10 policías y agredieron 
*758
al señor Ravelo, le patearon las piernas y lo levantaron en el aire. El apelante le rompió el celular al ciudadano. Luego le sujetaron las manos fuertemente con las esposas.

7- Sin hacerle las advertencias de ley, el apelante llevó al ciudadano al cuartel fuertemente esposado y la ingresó esposado en la celda. El señor Ravelo sufrió laceraciones en ambas muñecas debido a las esposas.

8- El señor Frank Acevedo informó al PM Luis D. Suárez Villalobos, supervisor del turno de esa noche, que el apelante había arrestado al señor Ravelo y lo tenía detenido en una celda. Suárez lo sacó de la celda y lo llevó a su oficina. Notó que el señor Ravelo tenía marcas en las muñecas debido a lo apretadas que tenía las esposas.

9- El PM Luis D. Suárez le pidió disculpas al señor Ravelo por la detención ilegal, a nombre de la Policía Municipal de Mayagiiez, porque entendió que no había motivo justificado para la detención, sino que se trataba de un mal entendido. Al señor Ravelo nunca le fueron radicados cargos por el incidente.

10- Días después, el señor Ravelo acudió al cuartel para buscar el informe sobre su detención. El apelante no lo había preparado y, a pesar de las órdenes para que lo redactara, nunca cumplió con esas instrucciones.”

De conformidad con las citadas determinaciones de hechos, la CIPA concluyó:

“No hay duda que el apelante violó las faltas graves al reglamento que le fueron imputadas. El arresto y encarcelamiento del señor Ravelo no estuvo justificado. Al participar en la agresión y arresto ilegal de un ciudadano, el apelante claramente violó la Falta Grave Numero 37 (A).

[...]

El apelante también violó la Falta Grave Número 1, debido a que con la conducta probada en el presente caso, demostró incapacidad manifiesta, ineptitud, descuido, parcialidad y negligencia en el desempeño de sus deberes. ”

La CIPA, luego de examinar los testimonios y la prueba documental que le fue presentada en la vista administrativa, determinó que el Sr. Irizarry cometió las faltas que le imputó el Municipio y concluyó que la expulsión de éste como miembro de la Policía Municipal estuvo justificada. A la CIPA no le merecieron credibilidad las declaraciones escritas de los Policías Municipales que presentó el Sr. Irizarry a los efectos de que el día de los hechos el Sr. Ravelo tenía una actitud negativa y estaba agresivo. La CIPA que fue quien vio y escuchó los testigos declarar, dirimió la prueba y adjudicó credibilidad. Nada en el expediente nos mueve a intervenir con la credibilidad otorgada por la CIPA.
Por el contrario, las declaraciones en cuestión sustentan la conclusión de la CIPA de que el arresto y encarcelamiento del Sr. Ravelo fue ilegal. Según dichas declaraciones, el Sr. Ravelo fue arrestado y encarcelado por un' alegado mal entendido, lo que indudablemente demuestra que el Sr. Irizarry carecía de motivos fundados para arrestarlo y encarcelarlo.
El criterio rector en la revisión judicial de las determinaciones de hechos de una agencia es la existencia de evidencia sustancial. Después de haber considerado la evidencia que obra en expediente en su totalidad, incluyendo la que sostiene la decisión de la CIPA así como la que la menoscaba, concluimos que existe evidencia sustancial que justifica su decisión. De un examen del expediente se puede colegir que las determinaciones de hechos esbozadas por la CIPA en su resolución están apoyadas por la prueba presentada durante la vista administrativa. Éstas, a su vez, sostienen las conclusiones dé derecho a las que llegó.
*759 El Sr. Irizarry no nos ha colocado en posición de resolver que las determinaciones de hechos efectuadas por la CIPA fueron infundadas. El Sr. Irizarry no presentó prueba testifical en la vista administrativa para refutar la presentada por el Municipio. Sin embargo, ahora pretende que le demos credibilidad a lo expuesto en las declaraciones escritas que presentó ante la CIPA y que la CIPA descartó. Somos del criterio de que tales declaraciones son insuficientes para que intervengamos con las determinaciones de hechos realizadas por la CIPA. Siendo el foro que adjudicó la controversia el que se encontraba en mejor posición para adjudicar la credibilidad de las declaraciones y no habiendo encontrado la existencia de actuaciones arbitrarias, ilegales o irrazonables por parte de dicho foro adjudicativo, nos abstendremos de intervenir con las determinaciones de hechos efectuadas por la CIPA.
Los procesos administrativos y las determinaciones de hechos de las agencias están cobijados por una presunción de regularidad y corrección. Esa presunción de regularidad y corrección debe ser respetada por este Tribunal mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. En el caso de autos, el Sr. Irizarry no logró rebatir la presunción de regularidad y corrección que cobija a la determinación de la CIPA. En consecuencia, procede que confirmemos la resolución recurrida en toda su extensión.
IV
De conformidad con los fundamentos expuestos, se confirma la resolución recurrida.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones